GENNARI ET AL., APPELLEES AND CROSS-APPELLANTS, *v.*
ANDRES-TUCKER FUNERAL HOME, INC., APPELLANT; CITY OF SANDUSKY,
CROSS-APPELLEE.

[Cite as Gennari *v.* Andres-Tucker Funeral Home, Inc. (1986),
21 Ohio St. 3d 102.]

(No. 85-257—Decided January 15, 1986.)

*Wilber & Wilber* and *George C. Wilber,* for appellees and cross-appellants.

*Wagner & Wagner* and *Walter R. Wagner,* for appellant.

*Buckingham, Holzapfel, Zeiher, Waldock & Schell Co., L.P.A.,* and *William E. Didelius,* for cross-appellee.

CLIFFORD F. BROWN, J.   The first issue posed by this appeal is whether R.C. 1721.18 applies to bar the defendant funeral home from operating its crematory without plaintiffs' consent. We hold that the statute does not apply to defendant, and that the trial court erred in enjoining defendant's use of the crematory.

R.C. 1721.18 provides in pertinent part:

"Any company or association incorporated for the erection and maintenance of a crematory may exercise all the rights and powers conferred by sections 1721.01 to 1721.18, inclusive, of the Revised Code, subject to the conditions provided in such sections. No building shall be erected for such a purpose within two hundred yards of a dwelling house unless the owner of the dwelling house gives his consent. * * *"

Clearly, the consent restriction contained in this statute applies only to a "company or association incorporated for the erection and maintenance of a crematory." The courts below held that, because defendant's articles of incorporation contemplated this purpose at the time of incorporation, defendant falls within the purview of the statute, and plaintiffs' consent was therefore required. For the following reasons, we disagree.

Defendant's articles of incorporation[1] reveal that defendant was not

---

[1] The articles of incorporation of Andres-Tucker Funeral Home, Inc. read in pertinent part:

"Third: The purpose or purposes for which * * * [Andres-Tucker] is formed are:

"(a) Undertaking, embalming, and directing of funerals of deceased persons, the building and maintenance of a funeral chapel, and the dealing in and selling of coffins and caskets, and all such property, goods, wares, and merchandise as are incidental to and used in the business of undertakers and morticians, and also the buying, owning, holding, selling, letting, leasing, and dealing in and with real and personal property of every kind and nature and also the owning and operating of motor vehicles and such other modes or vehicles of conveyance for hire, which motor vehicles or other conveyances now are or may be used in the ordinary course of the business of undertaking, embalming, and funeral directing.

incorporated for the express purpose of erecting or maintaining a crematory. The articles specifically set forth numerous purposes for which the defendant funeral home was formed; the word "crematory" or "cremation" is conspicuous by its absence. We are unpersuaded by the argument that although this purpose is not expressly set forth, it is "permissible" or "contemplated at the time of incorporation." This court has long held that statutes imposing restrictions on the use of private property must be strictly construed. *State, ex rel. Moore Oil Co.,* v. *Dauben* (1919), 99 Ohio St. 406, paragraph one of the syllabus. All doubts should be resolved in favor of the free use of property rather than in favor of restrictions on such use. *Saunders* v. *Zoning Dept.* (1981), 66 Ohio St. 2d 259, 261 [20 O.O.3d 244].

A properly narrow reading of the articles of incorporation in this case reveals that the erection and maintenance of a crematory was not the purpose of the incorporation. It was certainly not an express purpose, and does not even appear to have been contemplated at the time of incorporation. The fact that it may be a permissible use under the articles is irrelevant. The statutory language clearly limits its scope to companies or associations incorporated "for the erection and maintenance of a crematory." This court may not expand the boundaries of the restrictions to include limitations not clearly prescribed. *Saunders, supra,* at 261.

We hold, therefore, that R.C. 1721.18 does not apply to a company or association which was not incorporated for the express purpose of erecting and maintaining a crematory.

The next question for our review is whether the building permit issued by the city of Sandusky to the defendant funeral home for the addition of a crematory constituted a violation of that city's zoning code. The trial court reviewed the zoning code and the record and concluded that the building permit was illegally issued since there had been no "similar use" determination by the city of Sandusky Planning Commission as required by

---

"(b) To acquire by purchase, lease, exchange or otherwise, to own, hold, use, manage, develop, plat, improve and to sell, lease, rent, mortgage, exchange and otherwise deal in, real estate and any interest or right therein either on its own account or for the account of others; to erect, construct, rebuild, repair, manage, and control, lease, buy and sell, any and all kinds of buildings, shops, offices, houses, apartment buildings and structures; and to engage generally in the business of or operating, renting and leasing real estate of every character and description.

"(c) To do all such further acts as are necessary and convenient or expedient to accomplish the foregoing purposes or as are incidental thereto.

"Each purpose specified in any clause or paragraph contained in this Article Third shall be deemed to be independent of all other purposes herein specified and shall not be limited or restricted by reference to or inference from the terms of any other clause or paragraph of these Articles of Incorporation."

Sandusky Zoning Code Section 150.22(D).[2] For the following reasons, however, this court need not examine the correctness of this holding.

Assuming, as we are bound, that the trial court properly determined that the permit was erroneously issued, we nevertheless find that Section 150.50 of the Sandusky Zoning Code precludes any action based on the illegality of the permit. This section provides:

"All public officials of the city, vested with the duty and authority to issue legal documents, shall not issue permits or certificates for any building or use that would result in conflict with provisions of this zoning code. However, should a permit or certificate in conflict with the provisions of this zoning code be issued, it shall be deemed null and void, *unless it would operate to the prejudice of an owner who has acted in good faith in reliance thereon.*" (Emphasis added.)

The court of appeals expressly recognized that Andres-Tucker "acted in good faith and upon the reliance of a city building commissioner's assessment of the law * * *." We agree. After the issuance of the permit, and before defendant had any reason to question the permit's validity, it had already ordered a $30,000 crematory unit and commenced construction of the $20,000 addition to its building to house the unit. Thus, defendant incurred substantial expense in good faith reliance on the building permit issued by the city, and nullification of the permit would "operate to the prejudice" of defendant within the meaning of Sandusky Zoning Code Section 150.50. It follows that the permit may not be considered void, and plaintiffs are not entitled to an injunction based on any defects in the issuance of the permit.

We next consider the question of whether the trial court properly awarded money damages to plaintiffs for "mental anguish and interference with their peaceful enjoyment of their property." Defendant funeral home argues that this award was erroneous given the fact that plaintiffs did not specifically plead such injury and prayed only for injunctive relief or in the alternative for money damages for loss of property value. For the following reasons, we hold that the trial court erred in awarding damages for an injury which was not alleged.

The trial court expressly stated from the bench upon request of defendant's counsel that the issue of common-law nuisance was not properly before the court as it had not been pleaded or tried by implied consent of the parties. Thus, if the trial court's award of damages was based on a nuisance theory, it was clearly error. If the award was based on "invasion of privacy by a willful violation of a state statute and city ordinance," as the trial court later characterized it in its journal entry overruling defen-

---

[2] Sandusky Zoning Code Section 150.22(D) reads:

"Determination of similar use required. A building permit for any building or use shall not be issued for any use not specifically listed in this zoning code until a 'similar use' determination has been made by the commission."

dant's motion for reconsideration, it is erroneous since, as we hold today, no violation occurred, willful or otherwise.

Moreover, damages for mental anguish and interference with peaceful enjoyment of property are clearly special damages under these facts. "Special damages" are damages of such a nature that they do not follow as a necessary consequence of the injury complained of. See 30 Ohio Jurisprudence 3d (1981) 173, Damages, Section 166. Civ. R. 9(G) provides that such damages "shall be specifically stated." Plaintiffs' complaint does not allege mental distress or interference with peaceful enjoyment of their property, and therefore it was error to award damages for such injury.

As we find no legal basis for the trial court's award of money damages to plaintiffs, the award is hereby reversed.

The final question for review is whether the trial court erred in dismissing the defendant city of Sandusky from the suit. The trial court dismissed the city on the basis that its issuance of the building permit was not the proximate cause of plaintiffs' injuries. Based on our holding that the city's issuance of the permit to the defendant funeral home was not unlawful, plaintiffs can have no recourse against the city for its acts.[3] We therefore determine the trial court did not err in this dismissal.

For the foregoing reasons, the judgment of the court of appeals is hereby affirmed in part and reversed in part and final judgment is entered in favor of the defendant funeral home.

*Judgment affirmed in part*
*and reversed in part.*

CELEBREZZE, C.J., SWEENEY, HOLMES and DOUGLAS, JJ., concur.

LOCHER AND WRIGHT, JJ., concur in part and dissent in part.

LOCHER, J., concurring in part and dissenting in part. While I agree with the majority to the extent that statutes imposing restrictions on property should be strictly construed, I am compelled to dissent to the analysis utilized therein.

R.C. 1721.18 quite clearly prohibits erection and maintenance of a crematory without the consent of dwelling house owners who are located within two hundred yards of the crematorium. Moreover, the articles of incorporation, in my view, are broad enough to place the funeral home well within the purview of the statute. Absent any other portion of the articles that may apply, Article Three(c) in conjunction with Three(a) is broad enough to include any activity associated with a funeral facility, including

---

[3] We do not mean to imply that the illegal issuance of a building permit may, under any set of facts, form the basis for a cause of action by an aggrieved adjoining property owner against the issuing body. That question is not presented by this case.

the use of crematories. Moreover, if the maintenance and use of a crematory are not envisioned by the corporate articles, such act would clearly be *ultra vires*—an inconsistency I find difficult to reconcile. The existence of R.C. 1721.18 cannot be ignored, and it is incumbent upon the legislature, not this court, to make policy determinations with respect to such facilities.

Once we assume the statute to be applicable to the instant circumstances, a home-rule constitutional analysis is necessary to ascertain the relationship, if any, of the local zoning procedure to the state law.

Section 3, Article XVIII of the Ohio Constitution provides that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." This court has previously noted that "general laws" means statutes setting forth police, sanitary or similar legislations, and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations. *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113 [30 O.O.2d 474], paragraph three of the syllabus.

In the case at bar, Section 150.50 of the Sandusky Zoning Code, which allows building or use permits or certificates to erroneously issue if declaring the permit void "would operate to the prejudice of an owner who has acted in good faith in reliance thereon," clearly does not address the requirements of R.C. 1721.18, only the consequences of an erroneously issued building permit which is one of several questions herein. In the absence of a conflict, no further home-rule analysis is necessary. Once we recognize R.C. 1721.18 to be a general law validly promulgated under the health and safety powers of this state (see, *e.g., State ex rel. Standard Oil Co.,* v. *Combs* [1935], 129 Ohio St. 251 [2 O.O. 152]), absent the consent of residents pursuant to that statute, I would uphold the trial court in granting injunctive relief based solely upon the state statute. It was the duty of the funeral home to comply with applicable state and local statutes and its failure to do so, or ignorance thereof, should not absolve it of responsibility for the consequences of such failure. Because the majority declines to give R.C. 1721.18 sufficient deference, I dissent.

I concur, however, with the majority's analysis that concludes special damages are not properly awarded where not specifically stated, although the relevance of the majority's second syllabus paragraph to this case escapes me. An appropriate syllabus would simply reiterate the admonition in Civ. R. 9(G) that special damages must be specifically stated.

WRIGHT, J., concurs in the foregoing opinion.