**STOKES, Appellee,**

v.

**MEIMARIS, Appellant, et al.**

[Cite as *Stokes v. Meimaris* (1996), 111 Ohio App.3d 176.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68818.

Decided May 20, 1996.

178

*Sandra M. Stokes, pro se.*

*Dennis P. Levin,* for appellant.

JAMES M. PORTER, Judge.

Defendant-appellant James Meimaris appeals from a jury verdict and judgment entered thereon in the common pleas court finding defendant liable to his ex-wife, plaintiff-appellee Sandra Stokes, Ph.D., for defamation ($25,000) and assault ($2,000). Defendant contends that the verdicts and judgments are not sustained by sufficient evidence, that the damages were the result of passion and prejudice, that j.n.o.v. should have been granted to defendant on such claims, and that the accumulation of errors and admission of irrelevant and prejudicial evidence entitled defendant to a new trial, if judgment is not entered in his favor by this court. We find no reason to disturb the judgments below and affirm. The facts pertinent to this appeal as adduced at trial are set forth below.

Plaintiff and defendant, an attorney, separated in 1984 and were formally divorced in 1988. From the time of the divorce, there was a history of acrimonious conduct between the parties which erupted in court action and various criminal charges. From the original separation until October 22, 1992, the parties' daughter, Jennifer Meimaris, resided with plaintiff, a college professor with a doctorate in special education. Plaintiff testified that Jennifer suffered from a severe language/learning disability and had an I.Q. of 69, but was able to proceed in schooling by taking specialized courses.

On October 22, 1992, Jennifer, then eighteen years old, was attending Stark Technical College in Jackson Township, Ohio and studying secretarial skills. On that date, defendant went to the college with three companions, found Jennifer, and subsequently left with her. Plaintiff learned what had happened and feared for her daughter's safety because she had not heard from Jennifer, nor did she know her whereabouts.

Plaintiff contacted Captain Stephen Zerby of the Jackson Township Police Department and told him that she believed that Jennifer had been "abducted and kidnapped" by defendant. Captain Zerby testified that he would expect a person in the position of Dr. Stokes to use such terms to describe what had happened. Captain Zerby subsequently contacted defendant regarding this matter. Defendant did not permit the officer to speak with Jennifer. However, defendant informed Captain Zerby that he should not pay attention to plaintiff and her friend, Salvation Army Major Jean Manhollan, because they were "lesbians." Major Manhollan and plaintiff unequivocally testified that they were not lesbians. Defendant denied having used the term "lesbian," but testified that he did tell Captain Zerby that defendant and Major Manhollan were "lovers." Defendant stated that he had made the remark to Captain Zerby because he was trying to protect himself from an investigation into the "kidnapping" claims.

Plaintiff remained concerned for her daughter's safety and was told by defendant in December 1992 that Jennifer had left Ohio. Plaintiff discovered that this was untrue and that Jennifer was in fact at defendant's residence in Macedonia, Ohio.

Plaintiff, accompanied by her seventeen-year-old son Andrew and Major Manhollan, went to defendant's residence on January 9, 1993 to speak with her daughter and determine her safety. Defendant came out of the house, cursed and spat at plaintiff, and then took up a metal baseball bat. He brought the bat above his head and then slammed it to the ground, close enough to brush plaintiff's clothing. Plaintiff testified that defendant's action traumatized her and caused her to fear for her life. Her testimony on the altercation was corroborated by Andrew, as well as by Major Manhollan. The Major also stated that defendant hit her in the chest with the bat and that she feared at the time that defendant was going to kill plaintiff. When the police arrived, defendant had to be told several times to put down the bat before the officer would get out of the car.

The investigating officer quieted things down and went into defendant's house to see if Jennifer was all right. He reported that she said she was all right, and told the officer she did not want to see her mother or her brother. Plaintiff and her companions left without seeing her daughter.

On February 4, 1993, defendant wrote a letter to the territorial commissioner of the Salvation Army in New York. Plaintiff was a member of the local Salvation Army Advisory Board in Alliance, Ohio where she was on the faculty of Mount Union College. Her friend, Major Manhollen, was in charge of the local Salvation Army office. In the letter, defendant stated, among other things, that "[Plaintiff] and Major Manhollan have been seen by my children as inappropriately affectionate." At trial, defendant defined the term "inappropriately affectionate" as meaning "hugging and kissing," but denied that he meant to imply that plaintiff was a lesbian. Also, in a letter written by defendant which was attached to the February 4, 1993 correspondence, defendant stated that plaintiff and Major Manhollan had engaged in "inappropriate physical contact." Defendant's letter suggested that this relationship was damaging to the reputation of the Salvation Army.

Plaintiff and Major Manhollan testified that, as a result of defendant's letter, the Salvation Army conducted an investigation to determine whether plaintiff and Major Manhollan were having a lesbian relationship. Plaintiff testified that the members of the Salvation Army Advisory Board, community leaders in Alliance with whom plaintiff worked, were made aware of the allegations, which caused plaintiff great embarrassment and humiliation. She further testified that, after this incident, she was treated differently by colleagues. She further testified that she was first notified that her job was being eliminated approximately two weeks after defendant told Captain Zerby that plaintiff was a lesbian, and that prior to that time, she had received excellent performance evaluations.

There was no evidence that Zerby told anyone at the school about the lesbian allegations, but he stated that he was friends with the chairman of plaintiff's department. Zerby did not recall telling anyone at the school that plaintiff was a lesbian. A family therapist, Pat Zacha, testified that Captain Zerby had told her that defendant had informed him that plaintiff was a lesbian and an unfit mother. Major Manhollan was given similar information by Captain Zerby.

Although there was evidence that plaintiff's department at Mount Union was being phased out, plaintiff resigned her position at Mount Union in April 1993 and took a better-paying position at the University of Wisconsin at Green Bay.

Plaintiff filed a six-count complaint against defendant on May 13, 1993: three counts for abuse of process/malicious prosecution, defamation, assault, and intentional infliction of emotional distress.

On July 21, 1993, defendant filed his answer and counterclaim for defamation, intentional infliction of emotional distress, assault, trespass, and invasion of privacy.

Thereafter, plaintiff filed an amended complaint making the same allegations and adding claims for abuse of process and "malicious use of process." The amended complaint also joined the city of Macedonia, Ohio, and the city prosecutor. The new defendants were ultimately dismissed on summary judgment.

The case went to trial before a jury on September 26, 1994. The trial court directed a verdict on all plaintiff's claims except the defamation and assault counts, which were submitted to the jury. The defendant's counterclaim for civil trespassing and two claims of defamation were also submitted to the jury. The court directed a verdict on the rest of his counterclaims.

On September 30, 1994, the jury returned a verdict in favor of plaintiff on the defamation and assault claims, awarding her $25,000 and $2,000 respectively. The jury also returned a verdict in favor of defendant on his trespass claim, awarding him $1,000 and returned verdicts in favor of plaintiff as to defendant's defamation counterclaims. The jury found that neither party was entitled to punitive damages.

On October 12, 1994, defendant filed his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial or a remittitur, all which were denied by the trial court.

A timely notice of appeal ensued.

We will address the assignments of error in the order asserted.

"I. The verdict of the jury and the judgment rendered thereon with regard to appellee's defamation cause of action (Count IV) is not sustained by the weight of the evidence."

In determining whether a jury verdict is against the manifest weight of the evidence, this court must presume that the jury's findings were correct. Judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276. "Finally, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment most favorable in sustaining the trial court's verdict and judgment." *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, 1357.

Defendant argues that the jury's determination that plaintiff suffered compensable damage as a result of his defamatory statements was not sustained by the evidence.

The defamation shown by the evidence consisted both of the slanderous oral statement to Captain Zerby, as well as the libelous written statements in the

letter to the Salvation Army. "In Ohio, 'libel' is defined generally as a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace or affecting a person adversely in his or her trade, business or profession." *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1289; *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 365, 588 N.E.2d 280, 283–284; *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 145–146, 486 N.E.2d 1220, 1222–1223. Damages for defamation may include impairment of reputation, personal humiliation, shame, mental anguish and suffering. *Rogers v. Buckel* (1992), 83 Ohio App.3d 653, 659, 615 N.E.2d 669, 672–673; *Thomas H. Maloney & Sons, Inc. v. E.W. Scripps Co.* (1974), 43 Ohio App.2d 105, 110, 72 O.O.2d 313, 316, 334 N.E.2d 494, 498–499.

■ Defendant does not challenge the evidence that false and defamatory statements about plaintiff were made to others, and that he was at fault in making these statements. However, defendant contends that plaintiff failed to prove damages. Specifically, defendant claims that "an action based upon an accusation that one is a homosexual constitutes defamation '*per quod*' and cannot be maintained unless appellee alleges and proves special damages and actual damages." We are not persuaded by defendant's arguments that plaintiff failed to sustain her burden of proof.

■ "Ohio has heretofore recognized two types of libel, libel *per se*, and libel *per quod*. * * * [L]ibel *per se* is libel by the very meaning of the words used; whereas, libel *per quod* depends upon interpretation, inducement or innuendo. * * * In an action for libel *per quod* * * * the plaintiff has the burden to plead and prove special damages." *Thomas H. Maloney & Sons, Inc., supra,* 43 Ohio App.2d at 107–108, 72 O.O.2d at 315, 334 N.E.2d at 497. However, the record herein reveals that plaintiff did allege and prove special and actual damages, contrary to defendant's contentions.

■ Special damages are damages of such a nature that they do not follow as a necessary consequence of the injury complained of. *Gennari v. Andres-Tucker Funeral Home* (1986), 21 Ohio St.3d 102, 106, 21 OBR 395, 398–399, 488 N.E.2d 174, 178–179. In the present case, plaintiff claimed that the statements had caused her "mental anguish and humiliation" and supported this with her own testimony at trial. She testified that the investigation by the Salvation Army into her relationship with Major Manhollan caused her "tremendous embarrassment" as the Advisory Board on which she served consisted of community leaders in the small town of Alliance. Although she did not present any other witnesses to

testify that she was treated differently because of the lesbian allegation, she testified that people's attitudes changed towards her.

In *King v. Bogner* (1993), 88 Ohio App.3d 564, 624 N.E.2d 364, the court found that the defamatory statement that plaintiff was discharged from a drug rehabilitation center was libelous *per quod* rather than *per se, i.e.,* it was defamatory by inference or innuendo and not by the direct impact of what was spoken. The court held that "great pain and anguish" suffered as a result of the *per quod* defamatory statement are "of such a nature that they do not necessarily follow from a defamatory remark" and are therefore special damages. *Id.* at 568, 624 N.E.2d at 367. See, also, *Gennari, supra,* 21 Ohio St.3d at 106, 21 OBR at 398–399, 488 N.E.2d at 178–179. The Supreme Court in *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 594, 21 O.O. 471, 480, 37 N.E.2d 584, 594, stated that special damages are damages that "result from conduct of a person other than the defamer or the one defamed." In the case herein, plaintiff's embarrassment was the result of the investigation conducted by the Salvation Army. Therefore, her humiliation and embarrassment constitute special damages.

Defendant cites *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 540 N.E.2d 1358, and *Swartz v. Steele* (1974), 42 Ohio App.2d 1, 71 O.O.2d 46, 325 N.E.2d 910, for the proposition that damages which are purely speculative cannot be awarded. *Digital Analog,* however, dealt with damages sought for alleged lost profits of a business resulting from seizure of goods from a warehouse. *Swartz* dealt with damages sought in a "criminal conversation" case. Those cases are not dispositive or helpful in the instant case.

We do not agree that the damages awarded in this case were purely speculative, as defendant argues. To be sure the injuries to plaintiff were subjective in nature, as one would expect embarrassment, humiliation and mental anguish to be. That did not make them speculative. In *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 512 N.E.2d 979, the Supreme Court held that actual harm can result from injury to reputation and personal humiliation, as follows:

"As a subsidiary issue, appellants contend that a heightened standard is required for proof of actual harm inflicted by defamatory falsehood. We do not find a great constitutional basis for this argument. Moreover, in *Gertz [v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789], *supra,* the court stated at 350 [94 S.Ct. at 3012, 41 L.Ed.2d at 811]: ' * * * Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by *competent evidence* concerning the

injury, although there need be no evidence which assigns an actual dollar value to the injury.' (Emphasis added.) Thus, we do not believe that a heightened standard is required for proof of actual harm inflicted by defamatory falsehood." *Lansdowne*, 32 Ohio St.3d at 181, 512 N.E.2d at 984–985.

Plaintiff testified that she was a member of the Salvation Army Advisory Board, and that a lengthy investigation by that organization into the alleged lesbian relationship between her and Major Manhollan resulted from defendant's letter. As a result, plaintiff testified without objection that she suffered humiliation and embarrassment among her colleagues in a small college town. Although other witnesses testified that they were not aware of the lesbian allegations, nor did they think less of her, the evidence presented a jury issue. Once a prima facie defamation case is made by the plaintiff, then the amount of damages is a jury issue. *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 736, 612 N.E.2d 357, 362. Plaintiff was not required to provide the jury with some precise formula by which they could calculate a damage award.

The trial court properly instructed the jury that they were entitled to consider "effects upon physical health, * * * injury to reputation and standing in the community * * * [and] mental injury" and that "[y]ou should not be afraid of compensating merely because they were not able to prove the exact dollar amount of the suffering." Defendant made no objection to these instructions and waived any error based on the instructions. *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839, 844, 649 N.E.2d 1247, 1250; *Whiston v. Bio–Lab, Inc.* (1993), 85 Ohio App.3d 300, 307, 619 N.E.2d 1047, 1051.

We find the damage award was supported by sufficient evidence. Assignment of Error I is overruled.

"II. The verdict of the jury and the judgment rendered thereon with regard to appellee's assault cause of action (Count V) is not sustained by the weight of the evidence."

Defendant also contends that plaintiff's assault cause of action was unsupported by the evidence because plaintiff failed to prove damages. The jury awarded $2,000 to plaintiff for defendant's conduct in swinging a metal baseball bat at plaintiff and narrowly missing her.

Plaintiff testified to the terror she felt during the assault and that she feared that defendant was going to kill her, as he had threatened. This reaction was enhanced by defendant's wild ranting and raving. Her testimony in this regard was supported by the testimony of her son, as well as Major Manhollan. Plaintiff was not required to prove an actual physical injury to recover damages for assault. The tort of assault is defined as the willful threat or attempt to harm

or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. *Smith v. John Deere Co.* (1993), 83 Ohio App.3d 398, 406, 614 N.E.2d 1148, 1153–1154. Therefore, proof of a physical injury is not required as an attempt or threat of physical injury is enough to support an assault claim. This court stated in *Harris v. B & M Groceries* (Aug. 4, 1983), Cuyahoga App. No. 45937, unreported, 1983 WL 5611, that:

"In awards based on assault and battery, 'damages are "presumed" or the wrong is said to be damage in and of itself.' Dobbs, Remedies Sec. 7.3 (1973). Moreover, in the absence of physical injury, compensation can be based on pain and suffering, *Carter v. Petroff* (1931), 11 Ohio Law Abs. 81, as well as, humiliating mental suffering and anguish. *Wilson v. Parker* (Oct. 9, 1975), Cuyahoga App. No. 34137, unreported."

We cannot say that the jury's verdict of $2,000 and the judgment thereon on the assault cause of action were unsupported by the testimony at trial.

Assignment of Error II is overruled.

"III. .The verdict of the jury and the judgment rendered thereon with regard to appellee's assault cause of action (Count V) is not sustained by the weight of the evidence."

Although this Assignment of Error is identical to Assignment of Error II, defendant argues that the verdicts on the defamation and assault causes of action were the result of passion and prejudice. We find that this argument is without merit.

In *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 694, 591 N.E.2d 762, 772, this court stated that on appellate review of an award of damages, defendant must demonstrate that allowing the judgment to stand would be a "denial of substantial justice."

Defendant claims that the damage awards were enhanced by passion and prejudice engendered by alleged misconduct of plaintiff's counsel. Defendant complains that plaintiff's counsel "harped on child support issues" pending in the parties' divorce case, made improper arguments based upon the pleadings in another case between the parties, attempted to "besmirch and rebuke" defendant's counsel for refusing to refer to plaintiff as "Dr. Stokes," and asked the jury to hold defendant to a different standard because he was an attorney.

As to the child support contentions between the parties, the trial court expressly instructed the jury that these matters were admitted only for the limited purpose of permitting plaintiff's attorney to challenge defendant's credibility:

"THE COURT: Ladies and gentlemen of the jury, let me instruct you at this point there may be a series of questions asked of this witness relative to the prior domestic relations, and ongoing, ad infinitum, domestic relations dispute between the two parties. I'm allowing the questions solely for the purpose of credibility only. They are not to be used to judge what happened in this case, save and except as it might reflect upon the credibility of this witness. Do you understand that? That is an entirely different proceeding. You are not to make any determinations of who is right and who's wrong, or moral judgment as to that."

The judge's instruction was on the mark. It is well established that the jury is presumed to follow the instructions of law given to them by the trial court. *Bell v. Mt. Sinai Med. Ctr.* (1994), 95 Ohio App.3d 590, 599, 643 N.E.2d 151, 157. The court again reiterated at the beginning of its jury instructions at the conclusion of the trial, that the case was not about custody of the children, support payments or visitation. The evidence as to other legal skirmishes between the parties was germane to plaintiff's malicious prosecution and abuse of process claims, which were eventually directed out.

The trial court also sustained defendant's objections to comments by plaintiff's counsel and reminded the jury of the prior limiting instruction and instructed the jury to disregard the comments. Thus the precautions taken by the trial court as to this evidence helped ensure that the verdict would not be the result of passion or prejudice.

The trial court also sustained defense counsel's objection to statements regarding his failure to refer to plaintiff as "Dr. Stokes." Finally, as to defendant's claim that the jury was invited to treat him more harshly because he was an attorney, the trial court sustained the objection made by defense counsel and cautioned plaintiff's counsel before the jury as follows:

"THE COURT: Counsel, before you say the next thing, his [defendant's] ethical conduct or his fitness to practice law is also not in issue in this case."

The trial court took appropriate steps to ensure that the jury would decide this case on the merits and to keep the flare-ups between counsel to a minimum. Counsel for both parties tended to exceed the bounds of zealous advocacy and provoke each other. Under the circumstances, the court did its best to keep this under control. There is no extrinsic evidence of passion or prejudice affecting the jury's verdicts.

Assignment of Error III is overruled.

"IV. The verdict in favor of appellee as to appellant's counterclaim for defamation was against the manifest weight of the evidence."

 Defendant argues that, because the jury was instructed that plaintiff's ·
claim that defendant had kidnapped or abducted their daughter was defamatory
*per se*, the jury was required to return a verdict in his favor as a matter of law.
We do not agree.

 The claimant must also demonstrate fault on the part of the speaker
amounting to at least negligence. *Rogers v. Buckel, supra*, 83 Ohio App.3d at
659, 615 N.E.2d at 672–673; *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil
Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962. The testimony
of both plaintiff and Captain Zerby established that plaintiff contacted the police
out of fear for her daughter's safety. Zerby affirmatively stated that he would
expect one in plaintiff's position to use such terms (kidnapping and abduction) to
describe what had happened to her daughter.

While the instruction that plaintiff's words were defamatory *per se* may have
permitted the jury to presume the existence of damages and actual malice, it did
not require them to do so. The jury was free to determine that plaintiff was not
at fault in using such terms as any lay person might under the circumstances.
The jury apparently found that plaintiff was without fault in contacting the police
and informing them of what she believed had happened to her daughter. Given
the circumstances surrounding Jennifer's leaving Stark Technical College with
defendant and without notice to the mother, we cannot say that the jury's verdict
was unreasonable or against the weight of the evidence.

 Defamatory statements which would otherwise constitute defamation *per
se* are not actionable *per se* when the communicator has a qualified privilege.
*Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 246, 72 O.O.2d 134, 139–140, 331 N.E.2d
713, 719–720; *Smith v. Klein* (1985), 23 Ohio App.3d 146, 149, 23 OBR 387, 390–
391, 492 N.E.2d 852, 856–857. "Qualified privilege" was defined by the court in
*Hahn* as:

"A qualified or conditionally privileged communication is one made in good
faith on any subject matter in which the person communicating has an interest, or
in reference to which he has a right or duty, if made to a person having a
corresponding interest or duty on a privileged occasion and in a manner and
under circumstances fairly warranted by the occasion and duty, right or interest."
43 Ohio St.2d at 244, 72 O.O.2d at 138, 331 N.E.2d at 718–719.

Plaintiff's statements to Captain Zerby appear to fit squarely within the
doctrine of "qualified privilege." In *Paramount Supply Co. v. Sherlin Corp.*
(1984), 16 Ohio App.3d 176, 180, 16 OBR 186, 191, 475 N.E.2d 197, 202–203, this
court stated:

"Private citizens are qualifiedly privileged to give information to proper
governmental authorities for the prevention or detection of crime. *Popke v.*

*Hoffman* (1926), 21 Ohio App. 454, 153 N.E. 248; Prosser, Law of Torts (4 Ed.1971) 791, Section 115; Restatement of the Law 2d, Torts (1977) 281, Section 598. In that situation, no recovery can be made for defamation, absent a showing that the speaker was moved by actual malice. *Id.*"

Plaintiff was informed that her learning-disabled daughter had suddenly left her school with defendant and three companions under circumstances which led plaintiff to believe that her daughter had not gone willingly. Although defendant presented evidence permitting inferences that plaintiff was motivated by a desire to harass defendant rather than concern for her daughter, this conflicting evidence presented jury issues.

Assignment of Error IV is overruled.

"V. The trial court erred in permitting the appellee, over objection, to introduce wholly irrelevant and/or grossly prejudicial evidence."

Defendant contends that the trial court erroneously admitted evidence regarding the parties' domestic relations case and certain pleadings and an affidavit by defendant in another case.

As previously noted, the trial court instructed the jury that the questions it was allowing regarding these matters were being permitted only on the issue of defendant's credibility.

Evid.R. 608(B) provides that specific instances of conduct of a witness may, "in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness." The Staff Note to Evid.R. 404(A)(3) also states: "A witness's character trait for truth and veracity is always relevant for the purpose of attacking the credibility of the witness."

The allowance or disallowance of an exhibit is within the sound discretion of the trial court, and will not be disturbed on appeal unless abuse is shown. *Avon Lake v. Anderson* (1983), 10 Ohio App.3d 297, 299, 10 OBR 472, 474–475, 462 N.E.2d 188, 190–191. This court's ruling in *Shimola v. Cleveland* (1992), 89 Ohio App.3d 505, 511, 625 N.E.2d 626, 629–630, makes it clear that the trial court has broad discretion in the admission and exclusion of relevant evidence and that the reviewing court should be slow to interfere unless the trial court has clearly abused its discretion. Here, the trial court exercised the discretion granted to it under Evid.R. 608(B) in permitting cross-examination of defendant about these matters.

An abuse of discretion involves more than an error in judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable,

or arbitrary. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222. Here, the trial court's decision was well within its broad discretion.

Assignment of Error V is overruled.

"VI. The trial court erred in failing to grant appellant's motion for judgment n.o.v. for the reason that the verdict and judgment rendered thereon are not sustained by the weight of the evidence."

 "The standards applied to motions for a directed verdict and motions for judgment notwithstanding the verdict are identical." *Mantua Mfg. Co. v. Commerce Exchange Bank* (1996), 75 Ohio St.3d 1, 4, 661 N.E.2d 161, 164. All the evidence must be construed most strongly in favor of the party against whom the motion is made. *Id.* at 4, 661 N.E.2d at 164. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, 338. Where reasonable minds could reach a different conclusion, the motion must be denied. *Traster v. Steinreich* (1987), 37 Ohio App.3d 99, 101, 523 N.E.2d 861, 863–864. We have dealt with this issue in disposing of Assignments of Error I and II and it is unnecessary to repeat that discussion.

Assignment of Error VI is overruled.

"VII. The many errors of law occurring during the trial of the case constitute cumulative error sufficient, when considered together, to require a reversal and/or dismissal of appellee's claims."

Defendant's argument of cumulative error has offered no separate or new argument, but has incorporated his prior arguments under this assignment. It is not necessary to address this assignment of error. It is overruled.

*Judgment affirmed.*

SPELLACY, C.J., and MCMONAGLE, J., concur.