This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Scott Isquick ("Isquick"), appeals from the decision of the Summit County Court of Common Pleas, which entered judgment in favor of Appellees, Dale Adams and Dale Adams Enterprises, Inc. We affirm.
 I.
Isquick is a collector of antique automobiles. He contacted Dale Adams, who is in the business of restoring collector automobiles as Dale Adams Enterprises, Inc., to restore some of his automobiles. This appeal concerns the restoration of one of Isquick's automobiles, a 1911 Mercedes Benz, referred to as a "Skiff."
In 1992, Adams began restoring the Skiff for Isquick. The project took two years to complete. Fully restored, the Skiff won many awards, including the Veteran Motor Car Club of America's Best Professional Restoration of the Year in 1994. Isquick was invited to show the Skiff at the Essen Motor Show in Germany and traveled to the Retro Mobile Show in Paris. In Isquick's own opinion, the car was widely recognized in Europe. Isquick spent over $500,000 for Adams to restore the Skiff, and, once completed, it was appraised as being worth $1.5 million. Isquick was not satisfied with the restoration and contacted Adams numerous times for repairs and adjustments.
On August 26, 1997, Isquick filed a complaint against Adams and Dale Adams Enterprises, Inc. for breach of contract. Adams filed answers to the complaint. On July 27, 1998, Adams filed a motion for leave to file a first amended answer and counterclaim. The counterclaim stated claims for interference with business relationships and defamation. Adams claimed that Isquick made defamatory statements and damaged his reputation in the close-knit circle of classic car collectors. Some of those statements were that Adams is "nuts," he loses parts to the cars he restores, he pads his bills, and that he cannot make cars run. The docket reveals no entry granting Adams leave to file the amended answer and counterclaim; however, the counterclaim was filed on August 26, 1998.
On January 27, 1999, Isquick voluntarily dismissed his claim pursuant to Civ.R. 41(A), and the trial court placed the case on its inactive docket. On February 2, 2000, Adams filed a motion for default judgment, stating that Isquick had failed to file an answer to the counterclaim. Isquick filed a brief in opposition, claiming insufficiency of service of process, that he had never been served with the counterclaim. He further requested that the trial court dismiss the counterclaim for lack of prosecution, as the counterclaim had been pending for over one year with no action taken. He pleaded, in the alternative, for the trial court to grant him leave to answer. The trial court denied Adams' motion for default judgment and granted Isquick 14 days in which to file his answer. Isquick filed his answer and did not allege any affirmative defenses.
Adams amended his counterclaim on September 12, 2000. The case proceeded to jury trial on February 20, 2001. The jury found in favor of Adams and awarded him and his company damages in the amount of $400,000 for the interference with business relationships claim and $2,500,000 on the defamation claim. Isquick filed a motion for a new trial, JNOV, or remittitur. The trial court denied the motion. This appeal followed.
 II. Assignment of Error No. I "THE TRIAL COURT HAD NO JURISDICTION OVER THE CASE AFTER ISQUICK FILED HIS RULE 41(A) NOTICE OF DISMISSAL AND THE COURT THUS ERRED IN REINSTATING THE CASE AND ENTERING JUDGMENT FOR ADAMS ON HIS `COUNTERCLAIM.'"
In his first assignment of error, Isquick challenges the trial court's jurisdiction. He asserts that once he filed his voluntary dismissal, the trial court lost jurisdiction over the counterclaim. He further alleges that the error was not waived by his failure to object, because subject matter jurisdiction is not waivable and may be raised at any stage of the proceedings.
A court's subject matter jurisdiction connotes the power to hear and decide a case upon the merits. Morrison v. Steiner (1972),32 Ohio St.2d 86, paragraph one of the syllabus. "Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case." State v. Swiger (1998), 125 Ohio App.3d 456,462. The issue of whether a court has jurisdiction over the subject matter is never waived, and a party may raise this issue at any stage of the proceedings. Civ.R. 12(H)(3); Fox v. Eaton Corp. (1976),48 Ohio St.2d 236, 238, overruled on other grounds, Manning v. Ohio StateLibrary Bd. (1991), 62 Ohio St.3d 24, paragraph one of the syllabus. The court may also raise the issue sua sponte. In re Graham,147 Ohio App.3d 452, 2002-Ohio-2407, ¶ 29. See, also, Civ.R. 12(H)(3).
When a party files a notice of voluntary dismissal pursuant to Civ.R. 41(A), the trial court lacks jurisdiction to proceed in the matter. Pagev. Riley (1999), 85 Ohio St.3d 621, 623. However, a counterclaim, which had been properly filed and served prior to the dismissal of the complaint, and which states a legally sufficient basis to confer jurisdiction on the court, survives the dismissal. Alliance Group, Inc.v. Rosenfield (1996), 115 Ohio App.3d 380, 388. Accordingly, the trial court retains jurisdiction over a counterclaim pending at the time of the voluntary dismissal.
In this case, Isquick asserts that the trial court never granted Adams leave to file the counterclaim, and thus, the counterclaim was not properly filed. He argues that because the counterclaim was not properly pending at the time of the dismissal, the trial court erred when it exercised jurisdiction over the counterclaim and the matter proceeded to trial. We find that Isquick has waived review of these claims. Isquick never raised the issue of whether Adams filed his counterclaim with leave of court before the trial court. He appeared at trial and defended against the action. He failed to challenge the filing of the counterclaim then, and he cannot be heard on this issue for the first time on appeal. See State ex rel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276,278.
Isquick frames his argument in terms of subject matter jurisdiction, such that the alleged defect is not waived by his failure to object. Although he phrases his argument in such a way, Isquick's challenge is not to the subject matter jurisdiction of the court. This case was a tort action, seeking damages for interference with business relationships and defamation. This case is of the type of cases that a court of common pleas has the authority to hear and decide upon the merits. See R.C.2305.01. Furthermore, the counterclaim was filed before the voluntary dismissal and remained pending after the dismissal. Any attempt to challenge the trial court's granting of or failure to grant leave to file the counterclaim should have been brought by Isquick in the trial court and challenged as such. Isquick cannot now label the alleged error as a lack of subject matter jurisdiction in hopes that he may obtain relief on appeal, when he has waived any alleged error as to the filing of the counterclaim without proper leave of court. Isquick's first assignment of error is overruled.
 Assignment of Error No. 2 "THE TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT ON APPELLEES' CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT."
 Assignment of Error No. 3 "THE TRIAL COURT ERRED IN FAILING TO GRANT [APPELLANT'S] MOTION FOR DIRECTED VERDICT ON [APPELLEES'] DEFAMATION CLAIM."
Isquick's second and third assignments of error are related and will be addressed together. In his second and third assignments of error, Isquick argues that the trial court erred in denying his motions for a directed verdict on Adams' claims for defamation and tortious interference with contract. After a review of the record, we find that Isquick waived review of the trial court's denial of his motions.
When a trial court denies a defendant's motion for directed verdict made at the close of the plaintiff's case, the defendant may proceed to present evidence and preserve the denial of his motion for directed verdict by renewing his motion at the close of all of the evidence.Helmick v. Republic-Franklin Ins. Co (1988), 39 Ohio St.3d 71, paragraph one of the syllabus. A defendant who fails to renew his motion waives review of that issue on appeal. Chemical Bank of New York v. Neman
(1990), 52 Ohio St.3d 204, 207.
Isquick failed to renew his motion for directed verdict after he presented his defense. Because he failed to properly preserve this issue for appeal, he has waived the right to appeal the court's denial of his motion. Accordingly, his second and third assignments of error are overruled.
 Assignment of Error No. 4 "THE COURT COMMITTED ERROR IN ITS INSTRUCTIONS TO THE JURY ON QUALIFIED PRIVILEGE, OPINION, PROXIMATE CAUSE, AND DEFAMATION PER SE."
In his fourth assignment of error, Isquick challenges the trial court's instructions to the jury. We find that Isquick waived any objection to the jury instructions.
Pursuant to Civ.R. 51(A), "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Accordingly, a party may not challenge a jury instruction on appeal unless a specific objection is raised prior to deliberations. See Schadev. Carnegie Body Co. (1982), 70 Ohio St.2d 207, paragraph one of the syllabus.
Isquick argues that he did, in fact, object to the jury instructions in the judge's chambers after Adams' case in chief. However, the discussion in chambers was not made part of the record. After instructing the jury, the court stated, "I went over the jury instructions prior, obviously, to closing argument with counsel last night and this morning. Are there any additional objections that you have that were not already placed on the record previously to the Court's jury instructions?" Isquick's attorney replied, "None that have not already been stated, Your Honor."
We note that it is duty of the appellant to ensure that all parts of the record necessary for determination of the appeal are before this court and that the record is properly preserved for review. RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19. Isquick failed to preserve any objection he made to the jury instructions while in chambers. The objections do not appear in the record. Accordingly, Isquick has waived any objection to the jury instructions, absent plain error. Schade, 70 Ohio St.2d at 209.
A plain error is one that is "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." Id. Plain error occurs when, but for the error, the outcome of the trial clearly would have been otherwise. Doyle v.Fairfield Machine Co., Inc. (1997), 120 Ohio App.3d 192, 214. In the application of the plain error doctrine in a civil case, this Court must "proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice[.]" Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 121.
Isquick first challenges the failure to instruct the jury on qualified privilege for the defamation claim. Qualified privilege is an affirmative defense to defamation. Morrison v. Gugle (2001), 142 Ohio App.3d 244,258. A party must raise an affirmative defense in a responsive pleading, or the defense is waived. Id. Isquick failed to plead qualified privilege, and, as such, he has waived the defense. Therefore, it was not error for the court to refuse to issue a jury instruction on qualified privilege.
Isquick next argues that the court erred in failing to give an instruction concerning opinions. A statement is not defamatory if it is a statement of opinion, because expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution. Vail v.Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279, 280; DeVito v.Gollinger (1999), 133 Ohio App.3d 51, 54. "[T]he determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court." Vail, 72 Ohio St.3d at 280, citing Scott v.News-Herald (1986), 25 Ohio St.3d 243, 250. See, also, Wampler v.Higgins (2001), 93 Ohio St.3d 111, 126. Because the determination as to whether a statement is an opinion is not a proper issue for the jury, the failure to give instructions regarding statements of opinion was not error.
Isquick also asserts that the trial court erred in failing to instruct the jury on proximate cause for the defamation claim. Isquick claims that, "[i]f properly instructed, the jury could have determined that the actions of [another], not Isquick, caused damage to Adams." In order to find plain error, the appellant must allege that the error had a material adverse affect on the outcome and that the outcome of the trial clearly would have been otherwise, but for the error. Doyle, 120 Ohio App.3d 192,214. The argument that the jury "could have determined" that another was responsible for the damage to his reputation does not meet the standard for showing plain error.
Finally, Isquick asserts that the trial court incorrectly instructed the jury that several statements constituted defamation per se. Isquick argues that these statements are defamation per quod and that it was within the province of the jury to determine if the statements constituted defamation. The determination as to whether a statement constitutes defamation per se is a question of law, to be determined by the court, not by the jury. Matalka v. Lagemann (1985), 21 Ohio App.3d 134,136. Therefore, it was not plain error for the trial court to instruct the jury that several statements were defamatory per se.
Isquick's fourth assignment of error is overruled.
 Assignment of Error No. 5 "THE JUDGE ERRED IN FAILING TO GRANT ISQUICK'S MOTION FOR NEW TRIAL AND/OR REMITTITUR."
In his final assignment of error, Isquick challenges the trial court's denial of his motion for a new trial and/or remittitur.
Isquick asserts that trial court abused its discretion when it denied his motion for a new trial because the jury's verdict was excessive and the product of passion and prejudice. Isquick also argues that, in the alternative, the jury verdict was excessive but not the product of prejudice, and that, therefore, the trial court erred when in denied his motion for remittitur.
A trial court is afforded broad discretion in its determination of the propriety of a new trial pursuant to Civ.R. 59. Sharp v. Norfolk W. Ry.Co. (1995), 72 Ohio St.3d 307, 312. Accordingly, we will not disturb such a ruling absent an abuse of that discretion. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
"The amount of the verdict alone will not sustain a finding of passion or prejudice. There must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 65. Isquick fails to set forth an argument that the jury was influenced by passion or prejudice; he merely refers to the size of the verdict. Because Isquick fails to point to anything in the record to support his assertion, we cannot say that the trial court abused its discretion when it denied his motion for a new trial.
Lastly, Isquick contends that the trial court erred in denying remittitur on the compensatory damages awarded on both Adams' interference with business relationships and defamation claims. We disagree.
Through remittitur, a trial court has authority to correct an unjust award. Betz v. Timken Mercy Med. Ctr. (1994), 96 Ohio App.3d 211, 218. However, as to remittitur on compensatory damages awards, it has long been held that "a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." Moskovitz v. Mt. SinaiMed. Ctr. (1994), 69 Ohio St.3d 638, 655. It is the jury's function to assess the proper amount of damages, "`and generally, it is not for a trial or [appellate] court to substitute its judgment for that of the trier-of fact.'" Betz, 96 Ohio App.3d at 218, quoting Villella v. WaikenMotors, Inc. (1989), 45 Ohio St.3d 36, 40. As such, remittitur is a proper remedy when "the damages awarded by the jury [are] `so manifestly against the weight of the evidence to show a misconception by the jury of its duties.'" Id., quoting Howard v. City Loan Sav. (Mar. 27, 1989), 2d Dist. No. 88-CA-39.
In this case, the jury awarded Adams $400,000 on the interference with business relationships claim and $2.5 million on the defamation claim. Isquick argues that Adams' economic damages do not support the verdict amount. He further alleges that the verdict also cannot be reconciled with the evidence concerning non-economic damages.
In a defamation action, the plaintiff may recover economic losses, which include lost income and loss of earning capacity, where the evidence shows a nexus between the damages and the defamation. Kluss v.Alcan Aluminum Corp. (1995), 106 Ohio App.3d 528, 537. Damages may also include impairment of reputation, personal humiliation, shame, mental anguish, and suffering. Stokes v. Meimaris (1996), 111 Ohio App.3d 176,184. Once a plaintiff makes a prima facie case of defamation, the amount of damages to award is a determination for the jury. Cooper v. GraceBaptist Church of Columbus, Ohio, Inc. (1992), 81 Ohio App.3d 728, 736. Moreover, a plaintiff is not required to "provide the jury with some precise formula by which they could calculate a damage award." Stokes,111 Ohio App.3d at 186.
The plaintiffs in this case are both Adams and his business. The jury heard testimony from Jeffrey Walther that he owned three Duesenberg automobiles he planned on having restored. Walther estimated the cost of the restorations at approximately one million dollars. After hearing Isquick's defamatory comments at a car show, Walther decided not to have Adams restore his Duesenbergs. Mark Bober, a certified public accountant, estimated Adams' loss of future profits at $814,515, with a total economic loss to the company of $1,100,999. Dale Adams also testified that at one time he wrote a column for an automobile collector magazine, but, after Isquick's defamatory statements about his work on the Skiff, he "resigned in disgrace."
Josie Adams, Dale's wife, testified that it took years for their business to grow and become established. She related that the loss of the business to Adams "was devastating. It was his life's work. It was his dream. And, you know, he was a broken man. He had nothing to live for, nothing to look forward to."
Given the evidence, we cannot say that the verdict was manifestly excessive; therefore, the trial court did not err in denying Isquick's motion for remittitur. Isquick's fifth assignment of error is overruled.
 III.
Having overruled Isquick's five assignments of error, we affirm the judgment of the court of common pleas.
SLABY, P.J., WHITMORE, J. CONCUR.