OPINION
Defendant/appellant William L. Gibbons, Jr. appealed his conviction and sentence, Judgment Entry filed June 1, 1998, from the Stark County Court of Common Pleas on one count of involuntary manslaughter, in violation of R.C. 2903.04, and one count of attempt to commit murder, in violation of R.C. 2923.02. The plaintiff/appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On February 8, 1998, the appellant, William L. Gibbons, Jr., was arrested. On May 18, 1998, the Stark County Grand Jury returned a two count indictment charging the appellant with Murder in regard to Mr. Danjer Freeman and Attempt to Commit Murder with respect to Mr. Lonnie Richardson. This was a direct indictment, therefore, no preliminary hearing was conducted. On February 20, 1998, the appellant plead not guilty to both charges in the Stark County Court of Common Pleas. On March 4, 1998, the appellant filed a written waiver of his right to a speedy trial. On April 23, 1998, the trial court granted the appellant's Motion for an in camera inspection of the juvenile court records of Mr. Freeman and Mr. Richardson. On May 8, 1998, the trial court received the juvenile records for the in camera inspection. The appellant also requested recorded or written statements of all witnesses. The court ordered the prosecutor to double-check with law enforcement to make sure all statements were received, and further ordered that any such statements should be available to defense pursuant to Crim.R. 16(B)(1)(g). (Id. at 5-6.) Prior to the start of the jury trial on May 11, 1998, the trial court ruled that the juvenile court records of Mr. Freeman and Mr. Richardson held no exculpatory material and would not be disclosed to the appellant. 1 Tr. 5-6. The records were marked as Court's Exhibits 1 and 2 and were sealed for purposes of appellate review. (Id.) In accordance with State v. Favors (Sept. 5, 1996) Stark County Court of Appeals, Case No. 95-CA-77, 1996 WL 570864, unreported, the trial court overruled the State's Motion in Limine which had sought to exclude from evidence at trial specific instances of the victim's prior conduct involving violence. 1 Tr. 155-61. The court ruled that such evidence was admissible to show that the victims were the aggressors. Id. A jury trial commenced on May 11, 1998. The following facts were elicited: On or about February 9, 1998, several individuals were playing basketball at Brian's Park in Canton, Ohio. Appellant was one of the individuals playing basketball that day. The decedent, Danjer Freeman and victim, Lonnie Richardson, were also playing basketball. During the course of playing basketball, several lighters fell out of the pocket of one of the players, Derrick Johnson. Another player, George Chance, made the remark that Johnson must be smoking crack cocaine. The basketball games continued until dusk when it became too dark to play. 1 Tr. 213. As the players began leaving the court, one player, Ricky Flowers, brought up the subject of the lighters. George Chance apologized to Derrick Johnson about his earlier comment. However, as Johnson and Chance approached their vehicles outside the park, Johnson took off his shirt and challenged Chance to a fist fight. Meanwhile, as appellant left the basketball court, he looked back at the other players following him, including Danjer Freeman and Lonnie Richardson. As appellant approached the passenger side of his vehicle, Richardson pushed appellant against the passenger door and struck appellant in the head. A fist fight ensued between appellant and Richardson. Blows were exchanged. Appellant then proceeded to remove a knife from his waist band and stabbed Richardson, who was unarmed, across the back and then in the chest. Richardson received a punctured lung and cracked rib as a result of being stabbed. After appellant stabbed Richardson, appellant stabbed an unarmed Danjer Freeman in the stomach area. Freeman died as a result of his injuries. Immediately after stabbing Freeman, appellant entered the passenger side of the vehicle in which he had arrived and fled the scene with two other players, Jeremy Chesney and George Chance. Appellant claimed that he stabbed the decedent and victim in self-defense. Five witnesses testified on appellant's behalf. Appellant testified that he used the knife because he was afraid that he would be beaten. The knife was disposed of and never recovered. During the cross-examination of witnesses called by the defense, the State used grand jury testimony to impeach or refresh the recollection of two defense witnesses. Subsequent to a request, the State did provide the grand jury testimony of one witness to defense counsel. In the second instance, appellant's counsel did not request that the grand jury testimony be released to counsel and, therefore, it was not provided. During the trial, defense counsel attempted to enter evidence of specific instances of conduct by Lonnie Richardson to show that Mr. Richardson was the aggressor. The court refused to permit introduction of such conduct finding that the testimony at trial showed Mr. Richardson to be the aggressor. During the course of deliberations, the jury inquired of the court by way of a written question, "on Count 2 can we consider felonious assault?" 6T. at 1345. The court instructed the jury that they could not. Id. On May 18, 1998, the jury returned verdicts of not guilty of murder, but guilty on the lesser charge of involuntary manslaughter relative to Count 1 of the indictment and guilty of attempt to commit murder relative to Count 2 of the indictment. Id. at 1347-48. The trial court sentenced Mr. Gibbons to the maximum sentence of ten years on each count to run consecutively. Id. A Judgment Entry was filed June 1, 1998. It is from this conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I
MR. GIBBONS WAS DENIED DUE PROCESS, EQUAL PROTECTION AND A FAIR TRIAL BY THE PROSECUTOR'S USE FOR IMPEACHMENT PURPOSES OF THE GRAND JURY TESTIMONY OF DEFENSE WITNESSES WHERE THE PROSECUTOR DID NOT DEMONSTRATE A PARTICULARIZED NEED PRIOR TO DISCLOSING THE GRAND JURY TESTIMONY AND/OR DID NOT PROVIDE THE APPELLANT WITH THE GRAND JURY TESTIMONY OF THE PROSECUTION [sic] WITNESSES IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2 AND 10 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR II
THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. GIBBONS BY REFUSING TO DISCLOSE EVIDENCE MATERIAL AND RELEVANT TO THE ISSUE OF THE VICTIM AS THE FIRST AGGRESSOR WHERE THE APPELLANT HAD RAISED THE DEFENSE OF SELF-DEFENSE IN VIOLATION OF THE FIFTH, SIXTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR III
THE JURY'S VERDICTS ARE AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE WHERE THE APPELLANT HAD NO OPPORTUNITY TO RETREAT, WAS NOT THE AGGRESSOR AND HAD AN HONEST BELIEF THAT HE WAS IN DANGER OF SERIOUS PHYSICAL HARM AND/OR DEATH AND THAT HIS ONLY MEANS OF ESCAPE WAS TO UTILIZE A POCKET KNIFE.
 ASSIGNMENT OF ERROR IV
THE JURY VERDICT FINDING MR. GIBBONS GUILTY OF ATTEMPTED MURDER AGAINST A VICTIM WHO RECEIVED MINOR INJURIES IS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE, ESPECIALLY IN LIGHT OF THE JURY'S FINDING THAT THE APPELLANT LACKED A SPECIFIC INTENT TO PURPOSELY CAUSE THE DEATH OF A SECOND VICTIM WHO DIED AND THE JURY'S SPECIFIC REQUEST THAT IT BE PERMITTED TO CONSIDER THE LESSER OFFENSE OF FELONIOUS ASSAULT INSTEAD OF ATTEMPTED MURDER.
 ASSIGNMENT OF ERROR V
THE TRIAL COURT'S IMPOSITION OF MAXIMUM SENTENCES IS CONTRARY TO LAW WHEN THE APPELLANT HAD NOT PREVIOUSLY SERVED A PRISON TERM AND THE TRIAL COURT DID NOT MAKE FINDINGS THAT THE MAXIMUM SENTENCE WAS NECESSARY BECAUSE THE APPELLANT EITHER COMMITTED THE WORST FORMS OF THE OFFENSES OR POSED THE GREATEST LIKELIHOOD OF COMMITTING FUTURE CRIMES IN VIOLATION OF R.C. 2929.14; R.C.2929.15 AND R.C. 2929.19.
 ASSIGNMENT OF ERROR VI
THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES IS CONTRARY TO LAW WHEN THE TRIAL COURT DID NOT MAKE FINDINGS THAT CONSECUTIVE SENTENCES WERE NECESSARY TO PROTECT THE PUBLIC FROM FUTURE CRIME OR TO PUNISH THE APPELLANT, THAT THE CONSECUTIVE SENTENCES WERE NOT DISPROPORTIONATE TO THE SERIOUSNESS OF THE APPELLANT'S CONDUCT AND THE DANGER POSED TO THE PUBLIC, OR THAT THE HARM CAUSED BY MULTIPLE OFFENSES WAS SO GREAT OR UNUSUAL THAT NO SINGLE PRISON TERM FOR EITHER OF THE OFFENSES HAD ADEQUATELY REFLECTED THE SERIOUSNESS OF APPELLANT'S CONDUCT IN VIOLATION OF R.C. 2929.14.
 I
In his first assignment of error, appellant contends that he was denied due process, equal protection and a fair trial when the State used grand jury testimony to impeach and/or refresh the memory of defense witnesses, without a showing of particularized need and/or without providing the defense with the grand jury testimony of the prosecution witnesses. The State used grand jury testimony in regards to the cross-examination of two witnesses presented by the defense. During the trial, defense counsel objected at the end of the State's cross-examination of the first witness whose memory was refreshed or impeached through the use of grand jury testimony. However, his objection was on different grounds than those presented in this appeal. In regards to the second witness who was confronted with grand jury testimony by the State on cross-examination, trial counsel did not object nor request to review the grand jury testimony. Appellant now raises constitutional challenges to the state's use of grand jury testimony. Appellant is now claiming that he was denied due process, equal protection and a fair trial in the case sub judice when the State, being privy to all Grand Jury testimony regarding the defendant, was permitted to use grand jury testimony to impeach a witness without a prior showing of particularized need. Appellant argues that this procedure violates his constitutional rights because the defendant cannot gain knowledge of any Grand Jury testimony unless he demonstrates a particularized need for the testimony prior to its disclosure. These issues were not raised at the trial court and objections, based upon these issues, were not made to the trial court. "Failure to raise at the trial court level the issue of the constitutionality of the statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120,489 N.E.2d 277, syllabus. Therefore, generally, a failure to raise these issues in the trial court constitutes a waiver of these issues. However, the waiver doctrine of State v. Awan is discretionary. In re M.D. (1988), 38 Ohio St.3d 149,527 N.E.2d 286, syllabus. Criminal Rule 52(B) specifically provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. D'Ambrosio (1993),67 Ohio St.3d 185, 191. The disclosure of grand jury testimony is governed by Crim.R. 6(E). While grand jury matters are generally secret, disclosure of grand jury matters, other than the deliberation of the grand jury and vote of the grand jury, may be made to the prosecuting attorney for use in the performance of his duties. Crim.R. 6(E). Further, a prosecuting attorney "may disclose matters occurring before the grand jury, other than deliberations of the grand jury or the vote of the grand jury, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding." Id. In order for a defendant to obtain an order directing the State to release grand jury testimony to the defense, the defendant must show "particularized need". State v. Greer (1981), 66 Ohio St.2d 139,420 N.E.2d 982. To establish a "particularized need", the accused must show that his need for the information outweighs the need to maintain secrecy of the grand jury proceedings. Id. at 148 (citing Petition for Disclosure of Evidence (1980), 63 Ohio St.2d 212,407 N.E.2d 513). In the case sub judice, appellant argues that, pursuant to Crim.R. 6(E), the State was required to ask the trial court for permission to use and/or disclose a defense witness's grand jury testimony, prior to using such testimony to impeach the witness. In this case, the State did not request the Common Pleas Court's permission to release grand jury testimony. Appellant contends that the State should have to show particularized need in order to disclose the grand jury testimony at trial, just as a defendant must, in order for the State to obtain the trial court's permission to impeach a defense witness with grand jury testimony. Appellant cites to the federal cases of United States v. Sells Engineering, Inc. (1983), 463 U.S. 418, 426
and Illinois v. Abbott Associates, Inc. (1983), 460 U.S. 557,566 — 568, [hereinafter Abbott] in support of his contentions. However, upon review of the Sells and Abbott cases, we find that these cases do not support appellant's contention. Sells and Abbott stand for the proposition that a prosecutor must have the court's permission prior to disclosing grand jury testimony to third persons, including government agents who are seeking the testimony for civil matters. These cases do not address whether a prosecutor must obtain the trial court's permission prior to using grand jury testimony to impeach or refresh the memory of a witness. On the other hand, the State argues that the prosecution may use grand jury testimony to impeach defense witnesses. See State v. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, 1998 WL 310737; State v. Mastronardi (Dec. 5, 1997), Erie App. No. E-96-033, unreported, 1997 WL771575; State v. Hopfer (1996), 112 Ohio App.3d 521, 550, 679 N.E.2d 321. These cases stand for the proposition that the state is free to use the testimony for impeachment and that once the grand jury testimony is used for impeachment, the grand jury testimony of that witness must be released to the defendant. Hopfer, supra. These cases cite to no requirement that the State show particularized need prior to using grand jury testimony to impeach a defense witness. However, in this case, we need not determine whether appellant's constitutional rights were violated by the State's use of grand jury testimony to impeach two of appellant's witnesses, when the State failed to show particularized need prior to using the Grand Jury testimony and/or failed to provide all grand jury testimony to appellant's counsel. A review of the record demonstrates that, even assuming arguendo that it was error for the State to use the grand jury testimony as it did, no plain error occurred. The State used grand jury testimony in the cross-examination of two defense witnesses, Jeremy Chesney and George Chance. The use of the testimony was different in regard to each witness and, as such, will be considered individually. In regard to Mr. Chesney, appellant argues that appellant was prejudiced when the State was permitted to inform the jury that Mr. Chesney had invoked hisFifth Amendment rights before the grand jury, and that he had been granted immunity in order to obtain his testimony before the grand jury. The record reveals that Mr. Chesney was granted immunity from prosecution based upon his actions with "the knife and what happened in the car." 4 Tr. 981. Mr. Chesney testified at trial that he took the knife, with which appellant stabbed the victims, from appellant when appellant was exiting the car in which the three had fled from the scene of the incident. 4 Tr. 924-925. Mr. Chesney testified that he took the knife to use for his protection from the same people with whom the confrontation occurred. However, he admitted that once he learned that someone had died as a result of the stabbing and that the police wanted to speak with him, he hid the knife so that the police would not find it. 4 Tr. 924-928. Subsequently, Mr. Chesney retrieved the knife and buried it in a remote area because he was concerned that it was not concealed at its first hiding location. 4 Tr. 971. The witness admitted that this was done so no one, including the police, would find the weapon. Id. In this case, even if the trial court had not admitted information from the Grand Jury that Mr. Chesney was granted immunity, testimony as to what Mr. Chesney did with the knife would have been presented to the jury. Therefore, we fail to see how the information from the Grand Jury affected Mr. Chesney's credibility any more than the testimony he gave to the jury about the actual act of hiding the knife. Also, we cannot see how the appellant was prejudiced when the information about theFifth Amendment and immunity was disclosed to the jury. Additionally, Mr. Chesney's credibility was seriously undermined by his own actions prior to trial. Without reference to grand jury testimony, Mr. Chesney admitted that he gave statements to the police and had lied in those statements several times, including as to whether he had seen appellant with a knife, whether he knew where the knife was and whether he was aware that anyone had been seriously injured that night. Although Mr. Chesney knew that appellant had fatally stabbed someone with a knife, Mr. Chesney "wasn't going to tell [the police] about the knife." Transcript of Proceedings at 962. In his brief, appellant also raises the issue that testimony before a grand jury pursuant to a grant of immunity cannot be used for impeachment purposes. Appellant Brief, pg. 11 — 12. Appellant cites New Jersey v. Portash (1979), 440 U.S. 450, 459 — 460. We find a proper reading of the holding in that case bars the use of immunized grand jury testimony against a person when that person is a defendant in a later trial. Essentially, the federal court found that testimony compelled during a grand jury proceeding from a person following a grant of immunity was not voluntarily obtained from the person. Therefore, that compelled testimony could not be used to incriminate (impeach) that person at a later trial if that person were the defendant and chose to testify on his/her own behalf. Portash, 440 U.S. at 459-460; Accord, State v. Conrad (1989), 50 Ohio St.3d 1, 552 N.E.2d 214. Since the case sub judice does not involve a grant of immunity to the appellant/defendant, we see no merit in this argument. As to Mr. Chesney's testimony, appellant in his brief, makes no other references to trial transcript pages in support of his arguments. However, so as to make a more thorough analysis under the plain error standard of the portions of Mr. Chesney's grand jury testimony admitted at trial, we include the following discussion. Mr. Chesney testified at trial that shortly after the stabbing, the appellant, while in the car leaving the scene, said, "I think I cut somebody." Transcript of Proceedings at 961. Mr. Chesney, after reviewing the tape recording of his Grand Jury testimony, recalled that he had told the Grand Jury that the appellant indicated "he had cut a couple of people." Transcript of Proceedings at 982. We do not find that this discrepancy prejudiced the appellant, because the appellant himself testified at the trial in his own defense and admitted that two people were stabbed. There is also no doubt that the appellant knew two people had been stabbed at the time the stabbings occurred. Appellant's defense was that the first person had been stabbed in self-defense and the second person stabbed was stabbed unintentionally when the second person rushed the appellant, while appellant was pinned against a car, and ran into the knife appellant was holding. Transcript of Proceedings at 1130. We shall also discuss another discrepancy between Mr. Chesney's Grand Jury and trial testimonies though also not referenced in appellant's brief. Mr. Chesney testified at the trial that George Chance had unlocked the appellant's car door on the passenger side when George Chance opened the driver's door, reached in and hit the power lock button. The State brought out at trial, after Mr. Chesney had reviewed the tape recording of his Grand Jury testimony, that Mr. Chesney told the Grand Jury that after the victims has been stabbed and had backed away from the car, Chesney was looking at other individuals getting an object from another vehicle. And, the next time Chesney noticed the appellant, the appellant was already inside the car. We fail to see how this Grand Jury testimony was prejudicial to the appellant in any way. The appellant himself, during his testimony, never claimed he could not escape his attackers because the doors to the car were locked. Appellant claimed that he was hit by Lonnie Richardson as appellant reached for the door handle. Transcript of Proceedings at 1098. Appellant also testified that as he reached for the door handle again, Danejer Freeman hit appellant in the mouth. Transcript of Proceedings at 1101. Appellant testified that as he turned to see who hit him in the mouth, Danejer Freeman rushed appellant and ran into the knife. Transcript of Proceedings at 1102. We fail to see how Mr. Chesney's Grand Jury testimony as described in this paragraph was prejudicial to the appellant. It should also be noted that appellant's trial counsel, as well as Mr. Chesney, were permitted by the trial court to review the tape recorded Grand Jury testimony of Mr. Chesney. This occurred during the middle of Mr. Chesney's cross-examination. Appellant's counsel was also provided with a copy of Mr. Chesney's taped grand jury testimony to review overnight between Mr. Chesney's cross-examination by the State and his redirect examination by appellant's counsel. In sum, we do not find there was plain error committed by the admission of Mr. Chesney's Grand Jury testimony. Based upon our analysis above, we do not find that the outcome of the trial would have been different but for the admission of Mr. Chesney's Grand Jury testimony either in whole or in part. In regard to Mr. George Chance, we find that, even if it were error to allow the State to use Mr. Chance's grand jury testimony to impeach or refresh his memory, it was not plain error. On direct examination at the trial, Mr. George Chance testified that appellant carried a knife for protection from appellant's girlfriend's ex-boyfriend, 4 Tr. 1010. Later, Mr. Chance testified that appellant acted frightened after the incident. The State then asked the following: "Q. You testified in front of the Stark County grand jury on the 17th of February of this year; is that correct? A. Yes. Q. You were placed under oath at that time? A. Yes. Q. You went in and testified to the truth about the matters that happened on that evening? A. Yes. Q. Do you recall telling the grand jury at that time that William was acting normal? A. No. Q. You don't recall that? A. No. Q. If you were given the opportunity to listen to that transcript or that statement that you made, would that refresh your ability to remember how you testified? A. Yeah. * * * * Q. The defendant give you any reasons why he carried knives or any knife? A. For protection. Q. Did he state specifically what protection, what for? A. Yeah, for his girl friend's ex-boyfriend. Because he tried to hurt him before. Q. Again, sir, you recall testifying at the grand jury in February 17 of this year? A. Yes. Q. You recall being asked, when William said that he carried the knife for protection, and you responded, he carry it for protection. But he never said anything past that? Do you recall saying that? A. No. Q. At the grand jury you told them he never elaborated on it. He never said anything past that. Is that correct? A. I'm not, I'm not sure. Q. Well, you never told the grand jury about this alleged incident with some ex-boyfriend, did you? A. No. Q. In fact — in fact, you told them he never said anything more about it than just protection. That's what you told them; isn't that correct? A. I'm not sure." 4 Tr. 1048-1049. 4 Tr. 1054-1055.
However, under the circumstances of this case, even if the use of the grand jury testimony was error, we can find no plain error. Although the witness' testimony at trial that appellant appeared scared may have been beneficial to the defense, we cannot find that the impeachment or refreshing of this witness' memory with Grand Jury testimony indicating that appellant was acting "normal" after the stabbing, affected the outcome of the trial. First of all, Mr. Chance did not recall that he had testified in Grand Jury that appellant was acting normal. Secondly, the jury never was presented the Grand Jury testimony to verify whether or not the "normal" statements were actually made to the Grand Jury. Third, appellant testified at trial as to how he felt after the stabbing and the jury had the opportunity to judge credibility from the appellant. The jury's main factual issue in this case was the intent of the appellant at the time of the stabbings: self-defense, accidental infliction of injury, intent to cause serious harm or intent to kill. We cannot find that the outcome of the trial clearly would have been different if the State had made no reference to Mr. Chance's Grand Jury testimony that appellant was acting normal after the stabbing. As to why appellant may have carried the knife in question, we do not see how the inference that Mr. Chance's Grand Jury testimony was different from his trial testimony could have influenced the jury to the point that the outcome of the trial clearly would have been different. We do not see how the inference that the appellant may have carried the knife generally for protection rather than carried it for protection from a particular person had any impact on the outcome of this trial. And we do not find that this inferred discrepancy discredited Mr. Chance's testimony to any significant degree. We do not find that the inference the jury may have drawn from the questioning of Mr. Chance on this issue impacted the jury's determination of whether the appellant had proven the affirmative defense of self-defense or the defense of a non-intentional injury. We do not find that the outcome of the trial clearly would have been different if the State had not been permitted to refer to Mr. Chance's Grand Jury testimony at trial. We find no plain error. Likewise, upon review of the evidence presented at trial and our analysis of the effect of the State's use of grand jury testimony at trial, we cannot find, under the strict standard of plain error, that the cumulative effect of the use of the Grand Jury testimony effected the outcome of the trial. Although not set forth in his assignment of error, appellant's brief argues that it was improper for the trial court to, in essence, allow the state to present the Grand Jury testimony to the jury under the guise of refreshing Mr. Chance's recollection. The State did not present Mr. Chance the opportunity to review his Grand Jury testimony and the testimony was not presented at trial nor preserved for appeal. Therefore, appellant argues, there is no way to verify whether Mr. Chance's testimony was accurately represented by the State. Appellant cites the case of State v. Liberatore (1982), 69 Ohio St.2d 583,587-588, 433 N.E.2d 561, in support of his argument. In Liberatore, the court wrote that it was improper for the state, by continued questioning of one of its own witnesses, which questions went unanswered, to get before the jury innuendos and inferences which the state could not get before the jury by direct testimony of the witness. Id. (Relying upon State v. Dinsio (1964) 176 Ohio St. 460,200 N.E.2d 467). While the Liberatore court held such tactics constitute reversible error under those circumstances, the circumstances in the case sub judice are less compelling. In Liberatore, the prosecution presented a recitation of extended, unsworn and unrecorded remarks purportedly made by the witness, to inculpate the defendant. The evidence, recited by the prosecutor in Liberatore, was inadmissible hearsay that the prosecutor sought to present to the jury under the guise of refreshing the witness' recollection. Likewise, the witness in Liberatore was a prosecution witness, and as such the State was required to show surprise before it could cross-examine its own witness concerning a prior inconsistent statement. Id. At 587. We agree with appellant that it was improper for the State to question Mr. Chance in the manner it did without ever producing the Grand Jury testimony itself. Even though Mr. Chance testified he could not remember what he told the Grand Jury, the trial jury could have drawn inferences from the State's questions. The trial jury could have inferred what Mr. Chance testified to at Grand Jury or that he had at least, said something different at Grand Jury than he was saying at trial. However, even if all of the references made to the Grand Jury testimony of Mr. Chance were accepted by the jury as actually having been made by Mr. Chance to the Grand Jury, even though there was no proof that Mr. Chance made them, we do not find plain error. We do not find that the outcome of the trial clearly would have been different if the Grand Jury testimony had not been referred to in the State's questions to Mr. Chance. Since appellant's counsel did not object to Chesney's or Chance's testimony at trial on the grounds that their Grand Jury testimony was presented without a demonstration by the State of particularized need and/or without the defense being provided with the Grand Jury testimony of the prosecution's witnesses, our analysis is limited to determining if plain error was committed. We do not find that the admission of the testimony of Chesney and Chance, referencing Grand Jury proceedings, effected the outcome of the trial to the extent that the results of the trial clearly would have been different if the testimony in whole or in part had not been admitted.
 II
Under his second assignment of error, appellant maintains that he was denied due process and a fair trial by the trial court's refusal to disclose material evidence favorable to his defense. Specifically appellant agues that juvenile court records of Danjer Freeman, Court's Exhibit 1, and Lonnie C. Richardson, Court's Exhibit 2, included evidence that one of the victims was a member of a gang. In Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215, 218, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". Defense counsel motioned the trial court for the juvenile court records of Mr. Freeman and Mr. Richardson. Also, defense counsel requested any exculpatory material that the State may have in their possession. The trial court viewed the juvenile court records, marked as Court's Exhibits 1 and 2, in camera and determined that the files did not contain anything exculpatory in nature that would require the records to be turned over by the State of Ohio to the defense. 1 Tr. 6. We note that juvenile court records are confidential in the State of Ohio. "The proper procedure in determining the availability of confidential records is for the trial court to conduct an in camera inspection to determine relevancy and necessity, and whether the admission of the records outweighs the confidentiality considerations. . . ." State v. Fuson (Aug. 11, 1998), Knox App. No. 97CA000023, unreported, at 2-3, 1998 WL 518259 (relying upon Pennsylvania v. Ritchie (1987), 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40). The standard of review for materiality is a question as to whether there is a reasonable probability, that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. State v. Lawson (1992), 64 Ohio St.3d 336, 343,595 N.E.2d 902; In accord State v. Johnston (1988), 39 Ohio St.3d 48,529 N.E.2d 898 (regarding failure of state to produce exculpatory, non-confidential evidence to the defense). A reasonable probability is a probability sufficient enough to undermine confidence in the outcome of the trial. State v. Johnston, 39 Ohio St.3d at 61. The possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality. Appellant argues that the information sought was material and relevant to the issue of whether, the victim, Danjer Freeman, was the first aggressor in the confrontation between Mr. Freeman and appellant. Another victim in this case, Mr. Lonnie C. Richardson, testified at appellant's trial that he (Richardson) was the first aggressor towards appellant in regards to the confrontation between appellant and himself. As such, our review is limited to the impact these records would have had in relation to the charges resulting from the Freeman/appellant confrontation. Evidence of the victim's character is, in fact, admissible when offered to show that the victim was the aggressor rather than to show appellant's state of mind. State v. Favors (Sept. 5, 1996), Fairfield No. 95-CA-77, 1996 WL 570864 at 3 (citing State v. Marsh (1990), 71 Ohio App.3d 64, 70). When evidence of the victim's character is offered to show that the victim was the aggressor, there is no requirement that the defendant knew of victim's character because the question is what the victim probably did, rather than what the defendant thought the victim was doing. Favors at 4. Specific acts of violence previously committed by the victim and the victim's prior convictions are admissible character evidence to establish that the victim was the aggressor. State v. Schmidt (1979), 65 Ohio App.2d 239, 417 N.E.2d 1264. The issue raised by appellant on appeal is whether the juvenile court records of victim, Danjer Freeman, should have been released to the defense. We note that these records are confidential. Juv. R. 37(B). The purpose of Juv. R. 37(B) is to keep juvenile records involving children confidential, since the child's welfare is at stake. State ex rel Scripps Howard Broadcasting Company v. Cuyahoga County Court of Common Pleas, Juvenile Division (1995),73 Ohio St.3d 19, 652 N.E.2d 179. In this case, Mr. Freeman died at the age of 18. As such, the interest in keeping such files confidential had diminished. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151, 157. Danjer Freeman's juvenile court records identified convictions for carrying a concealed weapon in 1994, possession of a deadly weapon in 1993, and one count of aggravated menacing in 1993, although Mr. Freeman had been charged with two counts originally. While appellant contends the records include an admission that Mr. Freeman was a member of the Rated-R gang, the records contain only a report that indicates that Mr. Freeman was "known to be affiliated with a gang." As stated previously, evidence of prior specific acts of violence and prior convictions are admissible to show that the victim was the aggressor. While we agree that the offenses committed by Danjer when he was a juvenile are relevant to the issue of whether Danjer was the aggressor, the trial court had to weigh that against two other considerations. First, Danjer's young age of approximately 15 when the incidents occurred and second, the possibility that the delinquencies involving weapons may be more prejudicial than probative. Weighing these considerations, we do not find that the trial court abused its discretion in not allowing this evidence into the trial. As to gang affiliations, the records indicate that Mr. Freeman was known to be a member of a gang but these records would have been subject to hearsay objections had there been an attempt to introduce them to prove gang membership. In addition, the defense was aware of the possible gang affiliations of Richardson and Freeman. Transcript of Proceedings, May 18, 1997, at page 8. We find the trial court did not abuse its discretion in excluding this evidence. We also do not find that there was a reasonable probability that the result of the proceedings would have been different had the prior delinquency adjudications of Danjer Freeman been admitted. There was eyewitness testimony as to who the aggressor was as between Danjer and the appellant. Therefore, the juvenile court delinquency adjudications were not material to the appellant's defense. Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant argues that the jury's verdict, whereby the jury rejected his claim of self defense, was against the manifest weight and sufficiency of the evidence. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See also, State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175. Appellant was convicted of one count of involuntary manslaughter and one count of attempt to commit murder. The jury rejected appellant's claim of self-defense. In order to prevail on a claim of self-defense, an accused must demonstrate by a preponderance of the evidence that 1) he was not at fault in starting the affray; 2) he had a bona fide belief that he faced imminent death or great bodily harm and that his only means of escape was through the use of force; and 3) he did not violate a duty to retreat. State v. Jackson (1986), 22 Ohio St.3d 281. Issues of credibility remain with the jury in deciding whether the defendant has met his burden of proving self-defense. State v. Williford (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279. We find that there was sufficient evidence to support the convictions. Testimony was presented that appellant was "talking trash" right before the confrontation. 1 Tr. 304-305, 307. Although testimony showed that the physical altercation between appellant and Lonnie Richardson was started by Mr. Richardson, Mr. Richardson was unarmed. 1 Tr. 224-225. After blows were exchanged by appellant and Mr. Richardson, appellant pulled out a knife which had been concealed on his person and stabbed Richardson twice. 1 Tr. 224-225; 2 Tr. 398. After stabbing Mr. Richardson, instead of getting into the vehicle in which he had arrived, appellant proceeded to walk to the back of the car. 2 Tr. 495. At that point, appellant stabbed Danjer Freeman in the stomach. 1 Tr. 227, 2 Tr. 495. Mr. Freeman was unarmed and had not threatened nor physically harmed appellant. 1 Tr. 227, 2 Tr. 466. As appellant swung his knife towards Mr. Freeman, Mr. Freeman "kept trying to move away, but he [appellant] ran towards him [Mr. Freeman] and cut him." 2 Tr. 498. After the stabbings, appellant got in the vehicle in which he had arrived and fled the scene. 1 Tr. 235. In this case, appellant testified that he stabbed both victims. Sufficient evidence was presented to support the convictions and refute appellant's claim of self-defense. Upon review of the entire record, we cannot conclude that the convictions constitute a manifest miscarriage of justice. While conflicting evidence was presented, there was sufficient competent, credible evidence to support the verdict and we cannot find that the jury clearly lost its way. The evidence shows that appellant exchanged blows with one of the victims and then stabbed two unarmed men. Appellant's third assignment of error is overruled. IV In his fourth assignment of error, appellant contends that the jury's finding of attempted murder in regard to appellants's actions toward Lonnie Richardson is against the weight and sufficiency of the evidence. Appellant points to the jury's finding of lack of specific intent to purposely cause the death of Mr. Freeman and the jury's question as to whether they could consider felonious assault. Appellant claims the verdicts are inconsistent in that appellant was found guilty of attempted murder in regards to Mr. Richardson and not guilty of murder in regards to Mr. Freeman, but rather, guilty of the lesser charge of involuntary manslaughter. To be found guilty of murder, an accused must have been found to have acted "purposely", or in other words, to have had the specific intent to cause the death of another. State v. Smith (1993),89 Ohio App.3d 497, 500-501. Appellant argues that since the jury found that appellant did not have a specific intent to cause the death of Mr. Freeman, it is inconsistent that the jury would find a specific intent to cause the death of Mr. Richardson. First, we note that the jury's verdicts were not inconsistent. It is possible that the jury concluded that appellant intended to kill Mr. Richardson while only intending to seriously injure Mr. Freeman. The circumstances surrounding the stabbing of each victim were different. Mr. Richardson was cut by appellant twice, with two different swings of appellant's knife. Although Mr. Freeman died, he was stabbed once only. Secondly, the United States Supreme Court has held that multiple counts of an indictment are not interdependent. Each count in an indictment is regarded as if it was a separate indictment. State v. Powell (1984), 469 U.S. 57,67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461, 470. Id. at 475. Even if the verdicts were inconsistent, inconsistency of verdicts is not grounds to overturn a conviction. Id. at 476-478. A criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence. Id. at 478. On review for sufficiency of the evidence, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d at 175. In this case, evidence was presented that appellant became engaged in a fight with Mr. Richardson. Blows were exchanged. Appellant removed a knife from his person and cut Mr. Richardson. The struggle between them continued. Appellant stabbed Mr. Richardson a second time, causing Mr. Richardson further injury. Appellant points to the jury's question, "[o]n count 2 can we consider felonious assault" as substantiation of his contention that the jury did not want to find appellant guilty of attempted murder. However, it is presumed that the jury followed the instructions of law given to them by the trial court. Stokes v. Meimaris (1996), 111 Ohio App.3d 176,675 N.E.2d 1289. To overturn a conviction based upon such a jury question would require pure speculation, in which we will not engage. From the question posed, this court cannot determine why this question was posed. It could have been posed so that appellant could be convicted of a lesser offense, to satisfy a jury member's curiosity, or any other of the many speculative purposes imaginable. We find that there is sufficient evidence, which if believed, supports the jury's verdict of attempted murder in regards to Mr. Richardson. Further, this court holds that, upon review for manifest weight, we do not find that the jury lost its way nor created a manifest miscarriage of justice. Appellant's fourth assignment of error is overruled.
 V
In appellant's fifth assignment of error, appellant states that the imposition of maximum sentences was contrary to the law in that the trial court failed to properly apply R.C. 2929.19. Appellant contends that since appellant had not previously served a prison term and the trial court failed to make findings that the maximum sentences were necessary because appellant committed the worst forms of the offenses or posed the greatest likelihood of committing future crimes, the sentence was contrary to law. "As a preliminary matter, we note we no longer review sentencing under an abuse of discretion standard. After 1995 Senate Bill 2, an appellate court's review of an appeal from a sentence was modified. R.C. 2953.08 provides, in pertinent part: "(G)(1) The court hearing an appeal of a sentence * * * may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds any of the following:
(d) That the sentence is otherwise contrary to law.
Accordingly, we review the sentence under the new guidelines." State v. Boyd (Sept. 27, 1999), Stark App. No. 1999CA00045, unreported, 1999 WL 770792.
Appellant was convicted of two felonies of the first degree. As such, there is no mandatory prison term required, R.C. 2929.13(F), but there is a presumption in favor of imprisonment, R.C.2929.13(D). However, if an offender has not previously served a prison term, and is being sentenced to prison for a felony, a court is to impose the shortest term authorized for the offense unless the court finds on the record that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender or others. R.C. 2929.14(B). In this case, appellant has not served a prison sentence previously. However, "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from further crimes before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson (1999), 86 Ohio St.3d 324. In the trial court's pronouncement of sentence (set forth below), the trial court did make a finding that "anything less than the maximum sentence would demean the seriousness of that offense in that there were two victims, one of whom died as a result of the wound inflicted by you." This finding satisfies the requirements of 2929.14(B) for imposing more than the shortest prison term authorized by law. However, appellant is not challenging the trial court's imposition of a prison term that is more than the minimum. Rather, the appellant is challenging the trial court's imposition of the maximum sentence. A court may impose the longest sentence authorized only upon offenders who committed "the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders . . . and upon certain repeat violent offenders" . . . R.C. 2929.14(C). Since appellant was convicted of two first degree felony offenses, appellant was subject to a minimum prison term of three years and a maximum of ten years on each count. Appellant was sentenced to the maximum term of ten years on each count. The trial court in the case sub judice sets forth the following in its typed sentencing entry: "Pursuant to 2929.14(C), the court does hereby find that defendant committed the worst form of each offense, and that defendant poses the greatest likelihood of committing future crimes."
While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. That is because of R.C.2929.19(B)(2)(d) which provides, "[t]he court . . . shall make a finding that gives its reasons for selecting the sentence imposed . . . [i]f the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code . . ." In addition, the trial court must consider any relevant factors and all factors set forth in R.C. 2929.12 which are applicable when determining if the offender committed the worst forms of the offense or poses the greatest likelihood of committing future crimes. We must then turn to the sentencing hearing to determine if the trial court stated its reasons (supporting the statutory criteria findings made in its typed judgment entry) for imposing the maximum sentence. "In the absence of any reasons given, either orally or written, for imposing the maximum sentence, we find the matter must be remanded for resentencing." State v. Garcia (1998), 126 Ohio App.3d 485, 488. We find that the statements made by the trial court at the sentencing hearing support the finding that appellant poses the greatest likelihood to reoffend, but does not support the finding that appellant committed the worst forms of the offense. During sentencing, the trial court made the following comments: "Let me just say it this way: that over the years since I've been on the bench, time and time again it seems to me I'm finding young people, ah, before this Court, ah, because of a senseless act and the devastation that works upon the victims and the victims family and, frankly, the devastation it works upon the defendant and the defendants family, ah, it is, it is just so distressful to this court that, ah, situation involving a basketball game could bring parties before this Court, the access to weapons of destruction, be they gun or be they a knife, such as was in this case. The court has two victims in this case, ah, and you have to be, ah, sentenced with regard to each of those." 6 Tr. 1356-1357. And inasmuch as those to be, are the maximum sentences and consecutive sentence [sic], the court is going to indicate on the record was because of the fact that one, their were two victims involved in this offense, in that the seriousness of the offense, in anything less than the maximum sentence would demean the seriousness of that offense in that there were two victims, one of whom died as a result of the wound inflicted by you.
The weapon used was certainly calculated to cause serious bodily injury than or death; because of the size of the knife in the nature in which it was carried, the length of time the weapon was carried by you, the youth of the victims and the likelihood that this type of behavior could occur again in the future, and the lack of showing of any remorse on the part of the defendant.
For all those reasons, the Court found and feels that it was justified in giving the sentence that it did, and I wanted to state and those reasons on the record. Transcript of Hearing, May 20, 1998, page 4-5. We find that these oral comments at the sentencing hearing do meet the statutory requirement of giving reasons why the maximum sentence was imposed as to appellant posing the greatest likelihood to reoffend. The trial court stated that the appellant showed no remorse, was young and had been carrying a large knife for some length of time. On the other hand, the trial court does not provide sufficient reasons to support its determination that these were the worst forms of the offenses. The offenses by their very nature are horrible offenses. Involuntary manslaughter always involves a death and attempted murder involves a victim's close call with death. But the trial court set forth no factual support for why the offenses committed by the appellant were the worst forms of these inherently grievous offenses. However, pursuant to R.C. 2929.14(C), the trial court, in order to impose the maximum sentence, need only determine that one of the four criteria in R.C. 2929.14(C) applies to an offender. And, as stated previously, the determination must be supported by reasons. Therefore, since the trial court provided sufficient reasons to support its finding that the appellant poses the greatest likelihood for committing future crimes, and that finding is sufficient to support the trial court's imposition of a maximum sentence under 2929.14(C), we find the imposition of the maximum sentence for each offense was not error. The fact that the trial court in the case sub judice did not provide sufficient reasons to support its determination that these were the worst forms of the offense becomes irrelevant. We do agree, however, with appellant that the manner in which appellant was sentenced did not comply fully with the requirements of R.C. 2929.19(B)(3). Neither the verbal, in court sentence nor the Judgment Entry informed appellant of possible post-sentencing consequences based upon the actions of appellant while in prison and after release from prison. R.C. 2929.19(B)(3)(b)(c) and(e). Further, appellant was not informed of his right to appeal from a maximum sentence, pursuant to R.C. 2953.08, but we find this issue now moot. Appellant's fifth assignment of error is overruled as to issue of maximum sentences, but this matter is remanded to the trial court for compliance with 2929.19(B)(3).
 VI
In appellant's sixth assignment of error it is argued that the trial court's imposition of consecutive sentences was contrary to R.C. 2929.14. We disagree. The standard of review of this assignment of error is whether we can find clearly and convincingly that the imposition of consecutive sentences was contrary to law. R.C. 2953.08. In order to impose consecutive sentences when an offender is convicted of multiple offenses, a court must first find that consecutive sentences are necessary to protect the public or punish the offender. R.C. 2929.14(E)(4). The court must also find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Further, the trial court must find one or more of the following: a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Id. Of a), b) and c) above, b) is applicable to the case sub judice. Lastly, if a trial court imposes consecutive sentences, the trial court must give its reasons for imposing the given sentence. R.C. 2929.19(B)(2)(c). Therefore, to impose consecutive sentences in the case sub judice, the trial court had to find: 1) that consecutive sentences were necessary to protect the public or punish the offender, and 2) that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and 3) that the harm caused by multiple offenses was so great or so unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. And, as set forth above, the trial court had to support these findings with its specific reasons to support the findings. R.C. 2929.19(B)(2)(c) The Judgment Entry by which the trial court sentenced appellant sets forth the statutory language covering all the necessary requirements for consecutive sentencing. The Judgment Entry states: Pursuant to 2929.14(E), the Court does hereby find that consecutive terms of incarceration are necessary to protect the public and adequately punish defendant, and that the consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the public danger posed by defendant, and that the harm is so great or unusual that a single term would not adequately reflect the seriousness of his conduct.
We find that the trial court's Judgment Entry recites the statutory language to support the imposition of consecutive sentences but fails to state the reasons for imposing the given sentence. However, the transcript of the sentencing hearing reflects that the trial court made the following comments: "Let me just say it this way: that over the years since I've been on the bench, time and time again it seems to me I'm finding young people, ah, before this Court, ah, because of a senseless act and the devastation that works upon the victims and the victims family and, frankly, the devastation it works upon the defendant and the defendants family, ah, it is, it is just so distressful to this court that, ah, situation involving a basketball game could bring parties before this Court, the access to weapons of destruction, be they gun or be they a knife, such as was in this case."
The court has two victims in this case, ah, and you have to be, ah, sentenced with regard to each of those. 6 Tr. 1356-1357. And inasmuch as those to be, are the maximum sentences and consecutive sentence [sic], the court is going to indicate on the record was because of the fact that one, their were two victims involved in this offense, in that the seriousness of the offense, in anything less than the maximum sentence would demean the seriousness of that offense in that there were two victims, one of whom died as a result of the wound inflicted by you. The weapon used was certainly calculated to cause serious bodily injury than or death; because of the size of the knife in the nature in which it was carried, the length of time the weapon was carried by you, the youth of the victims and the likelihood that this type of behavior could occur again in the future, and the lack of showing of any remorse on the part of the defendant. For all those reasons, the Court found and feels that it was justified in giving the sentence that it did, and I wanted to state and those reasons on the record.
Transcript of Hearing, May 20, 1998, page 4-5. We find these comments are sufficient to meet R.C. 2929.19(B)(2)(c)'s requirement that a trial court state its reasons for imposing consecutive sentences, as related to the specific statutory language findings that a trial court must make to impose consecutive sentences. In our analysis of the fifth assignment of error we determined that the reasons given at the sentencing hearing supported a finding that the appellant was one who posed the greatest likelihood of reoffending. This was based primarily on the trial court's finding of appellant's lack of remorse. Likewise, we find that the same stated reasons support the conclusion that the consecutive sentences were necessary to protect the public, punish the offender and were not disproportionate to the danger the offender poses to the public. Likewise, the trial court stated sufficient reasons at the sentencing hearing to support findings that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and that the harm caused by the offender was so great that a single term would not adequately reflect the seriousness of appellant's conduct. The trial court stated that the weapon used was "certainly calculated" to cause serious bodily injury or death based on its size, the reason it was carried and the length of time carried by the appellant. The trial court further stated that there were two victims, one of whom died as a result of the wound inflicted by appellant. We cannot find by clear and convincing evidence that the consecutive sentences were contrary to law. Appellant's sixth assignment of error is overruled. In accordance with the foregoing opinion, we overrule assignments of error I through IV and VI. We overrule assignment of error V in part and sustain it in part. We affirm appellant's convictions for one count of attempted murder and one count of involuntary manslaughter, and we affirm the sentence of the Stark County Court of Common Pleas as to the issues of maximum and consecutive sentences.
We remand this matter for further hearing regarding the issue of notifying the appellant of the information set forth in R.C.2929.19(B)(3).
 _________________________ EDWARDS, J.
HOFFMAN, J. concurs separately. GWIN, P.J. concurs in part; dissents in part.